For the record, Justice Hoffman is not able to be with us this afternoon. He is a full participating member of this court, of this panel, and of each case that will be heard this afternoon. He has the benefit, like we all do, of your written briefs that have been filed in your respective matters, and he will also have the benefit of oral argument in each and every one of those cases this afternoon, and will be a full participating member in every decision on all the cases this afternoon. Thank you, and please call the first case of the afternoon. Our first case this afternoon is case number 5-14-0239WC, Alliance Coal Company. Oh, excuse me. We have to take a case out of order. I'm sorry I did not inform you. The case of Brent Stanley, the third case, will be your first case. Yes, Your Honor. Well, sorry, Counsel. We didn't get that word out. Our first case this afternoon is 5-14-0324WC, Brent Stanley v. Workers' Compensation Commission, Harrisburg Police Department. May it please the Court, Counsel, good afternoon, Your Honor. This case comes to you from Saline County. It involves my client, Brent Stanley. It occurred on a day that Harrisburg remembers well, because there was a tragic tornado that day in Harrisburg. As part of his duties, Mr. Brent Stanley took his assigned squad car, which was a 2000 Crown Vic, and went to the police station, and when he got there, the normal place where he parks was occupied, and so part of the parking lot was on a severe incline, and what he was left with was the designated area where it was on a severe incline. He opened the door with his left arm, pushed it out, held it open with his left foot, because the door was going to come back and hit him if he didn't. He had paperwork in the passenger seat, which he reached over to retrieve, and then in one motion tried to get out of the car without the door hitting him, and the door hit him, hit him in the left shoulder. So why is this a neutral risk? Well, because he's in an assigned vehicle, a 2000 Crown Vic, whose door wouldn't stay open on an incline, and he's got to be in an assigned area, it's an assigned parking lot, and he's reaching for paperwork, which is part of his duties, to get all of that out, that's when the injury happens. So when you say he's in a Crown Vic, a member of the public on an incline wouldn't be subject to the same risk? No, because there's no evidence of what incline this was measured against the general public. They didn't introduce evidence from the respondent that this was exactly the same as the general public. That kind of is derived from, I guess, the experience of the commission. But there aren't any pictures in evidence. There's no evidence contrary to what Brent Stanley said happened in terms of why he was on the incline, the fact that he was retrieving paperwork, the fact that he had to hold the door open, the fact that this was a 2000 Crown Vic whose door wouldn't open. There's no evidence that every Crown Vic, 2000 Crown Vic's door won't stay open. Now the commission found that it was a neutral risk, correct? Well, that's what the commission found, but there's no evidence to support it. The reason I think, I have biases against neutral risk, but the issue in this case is was the things that happened to him, were they unique to him? And they are unique to him. He's a police officer with an assigned car. This isn't his normal car. He's on an incline in an assigned lot. So not every incline is the same. He has to reach for paperwork that is work-related, so he can't use his arms to keep the door open while he gets out. He explains all of those things. So that's not a neutral risk. Those are risks uniquely associated with his perk. And so what you have is you have undisputed evidence about what happened to him, and there isn't evidence introduced that this is a common risk. There's just a declaration that it's common, but there has to be some evidence supporting that notion. When you got out of your cars today, you weren't in a 2000 Crown Vic. You weren't on an incline. You weren't necessarily picking up police material from the passenger seat. All those things are unique to his job. And if they're unique to his job, you don't do a second analysis of greater risk. You simply recognize that what he was doing was, in fact, a risk of his employment. The second issue in this case is equally troubling in that there is evidence, medical evidence establishing causation from the doctor who wrote a letter and said that these issues with his left arm, which were described in the record, were compensable as it related to the injury. There is no contrary medical evidence, none introduced. But what the commission does in this case is declare that because he had preexisting conditions, his problems with his left arm were in consequence to preexisting conditions. There's no medical testimony establishing his preexisting problems to his current problems. The case of Brown v. Baker, which was kind of a watershed case when it came out, stopped defendants and respondents from just throwing preexisting conditions up on the wall and saying, well, he's got preexisting conditions, so therefore there's not causation. Brown v. Baker says that if the petitioner or the plaintiff has the burden of proving causation by medical testimony, so does the respondent if the argument is that the preexisting condition is the cause of the problem. So what the commission does is it notices he's got preexisting conditions and then makes the nexus, well, that must be what's wrong with him, and we're going to ignore the testimony or the evidence that there's causation. Well, did they actually say that? Did they not state, quote, even if a compensable accident had occurred on March 3, 2012, there remains a lack of persuasive evidence that the accident is causally related to any of the conditions for which Dr. Lehman is currently treating claimant. In other words, basically implicitly finding that Lehman's opinion was not persuasive. Well, it says the evidence shows the petitioner suffers from widespread degenerative changes in the shoulder joint. However, there is no evidence the petitioner sustained any significant injury. Well, significant suggests some injury, but it's not a big injury. If there's any injury associated with this that's causally related, it's compensable. And if it's not persuasive, why isn't it persuasive? I mean, no one cross-examined the letter. No one looked at Dr. Lehman and said, well, gee whiz, he's got shifty eyes. This was a document admitted into evidence without objection establishing a causal connection. There is no contrary medical evidence, period. So how does the document itself not persuade? Let me answer this rhetorically, and maybe it's theoretically, part theoretical. But could the commission ever not believe the testimony of a doctor? Is that something they cannot do? Yeah, it can if there's credibility at issue. What credibility has been attacked? What contrary evidence is there? Now, this is a preponderance case. So if I have this brief in front of me, preponderance means I turn one page. I've carried my burden of proof. I put forth evidence, the doctor's report, the primary care doctor's reports which said this is a work-related injury. I put in evidence. Where's the contrary evidence? If it's just preponderance, I've carried it. And we're talking about a document, a document that goes in without any objection. And we're going to say that documents are not credible when they establish the causation? That's the whole basis of manifest way to the evidence. There has to be contrary evidence to support the commission's decision. There is no contrary medical. So, I mean, this is an evidence issue. And, you know, when there are undisputed facts to an issue, which is true here, it is undisputed that there is one causal opinion, one, no contrary, nothing to battle back against it, well, then I've carried the day. And, again, I don't want to get too hypothetical, but let's assume you have a claimant testifies as to chain of events, somebody with that theory, and there's nothing to dispute the claimant's testimony as to the source of the injury and his medical history. Does the commission have to believe the claimant? According to your preponderance theory, the claimant has carried the day because there's no contrary evidence, correct? Well, I guess if the petitioner's evidence lacks credibility completely, that there is no credibility, then, yeah, they can do it. But if there's an inkling of credibility, I've carried it. I mean, how do you judge credibility when there's no contrary evidence? Well, you make a very logical point, but you're also well aware of the maximum loss as credibility is solely and completely within the province of the commission. I get that, Your Honor. And here you have an arbitrator who, in fact, says that the plaintiff is credible and that the medical records are consistent, and it goes to the commission where we live with the legal fiction that people at the commission actually make credibility. Now, I have to deal with that, but this is a remedial statute, and it's not supposed to be this hard. So if you put forward evidence that supports the petitioner and there is no contrary evidence, for the commission to then say there's a credibility issue, I mean, that's a fiction. And someone like Mr. Stanley shouldn't be deprived of benefits under the Comp Act based on a legal fiction when here there's evidence supporting causation. There is no evidence contrary to causation. I mean, the words itself, it's not, was it significantly injured? Well, what does that mean? A little bit injured, I win. So I just think that, you know, I would encourage you, I know you have, but read the commission's decision and see if it makes sense to you. It really doesn't. It really doesn't when they use words like sufficiently related to his duties. Significantly injured. Well, what in the heck does that mean? It means there is some relationship. It means there's some injury. It just wasn't enough for him. Well, when I put forward evidence and there's nothing in the contrary, Mr. Stanley should prevail. Thank you. Thank you, counsel. Counsel, you may respond. Please record, counsel. I'll start in the same place. I'm sorry, my name is Mark Kosamine, and I do represent the employer in the case. I'll start where counsel started with the greater risk or no greater risk standard. It really comes down to which type is it. You know, is it a personal risk? There's really no F. That doesn't even come into play. There's nothing internal. There's nothing personal. No, we can exclude that. It's either the employment or it's neutral. The employment risk. It sounds like if my wife goes to the mall and she's reaching to get her purse and the door shuts on her, she's a cop. It sounds like the argument he's making. Was it part of her job to be at the mall? No. This is being recorded, so be very careful about your answer. Well, you would think so sometimes. She might be listening to your argument later. That's okay. She knows. She's rolling her eyes anyway. What we have here, Mr. Stanley was in a parking lot, in the police department's parking lot, and it's clear that he wasn't in his normal place. So to say that he's in an assigned spot is not accurate. He's in a different place than usual because the rest of the lot is filled with members of the general public. He's parking back where members of the general public usually park. He's not where he normally is because of this crowd. So to say he's at a greater risk than the general public is a fallacy because he's where the public is. What about his argument that he's in a Crown Vic and he's reaching for employment-related papers or something? That's no different than somebody reaching for a purse or somebody reaching for anything else. There's nothing about the papers that made him get injured. Is there a defect in the car? There's no evidence that the car is defective. So the red herrings, they don't expose him to a greater risk. The car, there's nothing police-like about the door. So no, they're all red herrings. It's no different than any of us parking on an incline, either in a parking lot, on a driveway, anywhere else in the city. Would it make a difference if there was evidence of a defect? I think it might. If he's in an assigned car that's defective, there might be something to that. Wouldn't that be an employment risk? I think that would be, but there's no evidence of a defect in this case. I thought that was kind of the easy one. The Supreme Court in the Brady case explained the way neutral risks are analyzed, and I think this falls right under that situation. It's a neutral risk, and it's just not compensable. What about causation? He makes a logical argument. He's got the paper there. We've got testimony. We've got laymen. There's no contrary medical evidence. So why doesn't it carry the day? There is contrary evidence. The commission seemed to think it was significant that the employer didn't really know anything about an injury until a month later. The chief of police testified. He's known the guy forever. They're friends, good working relationship. He didn't know anything at all about it. So it was not reported until a month later? Right. What did he seek medical treatment for? About a month later is when he sought medical treatment for his shoulder. Now, there's evidence that he went to his doctor for an allergy shot a few days afterwards, and there's no mention of his shoulder being injured. He got a shot in the exact same spot where he says he got hit by the car door, but he didn't get any treatment for his alleged work injury until about a month after it happened. And look at all the diagnostic studies. They're all degenerative in nature. So if you're looking for a reason for the commission to not believe Dr. Layman's causation opinion, well, there's no indication that there was a trauma. There was never an indication there was a bruise. There was never an indication on the MRI or x-rays that showed any sort of traumatic injury. And the one note where Dr. Layman talks about there being causation relating to the accident, he's talking about the elbow. Now, the elbow, there's no indication it was hit by the car door, and there's evidence in there that he had loose bodies and degenerative changes in his elbow going back several years. And, you know, is it a reasonable inference that he's suffering from the same condition now as he was then? Sure. Sure that's a reasonable inference. There was trauma to the same part of the body, and it was a preexisting condition relative to the arm or shoulder? Is that what you're saying? Relative to the elbow. Right. I mean, he had degenerative changes in the shoulder as well, but there was a previous injury and previous treatment, a previous surgery for the elbow. In fact, he got, you know, had surgery on it to remove a loose body, and I guess if we're going to use logic, can't say it really recovered because he got 22.5% of an arm for it. So he's already got some permanent disability in the elbow. And the report of the complaint surfaced about a month later, is that what you're saying, in terms of the medical records? Yeah. You're talking about the first treatment after the accident? Yeah. The first treatment for the shoulder was roughly a month after it happened. That's correct. You've said it yourself, you know, the commission gets to decide these things, you know. We look to them, and they have to make decisions. I came up with a deep conclusion by myself that the commission gets to decide these things. I thought I was deeper than that. You're just the one that said it out loud first. And I don't think there's really anything more to it. It's just that simple. There's no causation, and there's no accident. Thank you very much. Thank you, counsel. Counsel, you may reply. With regard to the question about a defect, he said the door wouldn't stay open. Everybody knows that the doors have those two little notches that when you hold it all the way open, there's a notch, and that's supposed to stay open. He said that it wouldn't stay open, that he had to hold it with his foot. Now, did I hire an engineer and do that? I didn't. Should you have to when there's evidence that he's got to get paperwork and he's holding up a door and he's in his assigned vehicle and he's in his assigned lot, and I take exception with he's parking where the general public is. It's not so. It's not like that. You're, in effect, saying his testimony establishes common knowledge that there must be a defect in that door. Well, there's an inference from the fact that he had to hold it open with his foot. That's the same idea. And there is no contrary inference. With regard to the medical, I would just encourage the court to consider Brown v. Baker and what the burdens of proof are. If the respondent wanted to make the point that his problems for which he was complaining were caused by preexisting conditions and not the current injury, it requires medical testimony. That's Brown v. Baker, Fifth District case. There's cases after that that say amen to that. And so there is no contrary medical evidence. The notion that he reported it 30 days later, that that somehow makes it not causally related, again, why not? What medical opinion testimony is there that says the 30-day delay means there is no causation? Again, it's the presence of evidence versus the absence of evidence. The commission didn't weigh evidence because there isn't any contrary evidence, which is why I think we won in the first place. I think Judge Gallagher understood that. So when you have evidence compared to the absence of evidence, there's causation. And I take your point, Justice Hudson, that it is the province of the commission to deal with credibility. But let's not deprive someone like Brent Stanley of benefits when there's evidence supporting his case based on the legal fiction that these people looked at a document and weighed the soul of Dr. Lehman. That just did not happen. I ask that you reverse. Thank you. Thank you, counsel, both for your arguments in this matter. Thank you for taking my advice on written disposition and salvation. The court will stand on brief recess for a couple of minutes.